ANDREW P. WAKEMAN *vs.* EMILY H. GLOVER.

Third Judicial District, Bridgeport, April Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

The word " beach " when used in a deed as one of the boundaries of the land conveyed, is not necessarily and always to be confined to that strip which lies between low and high-water mark. Other parts of the description, and the circumstances under which the conveyance was made, may justify the trial court in giving the word a broader meaning, so as to include the sandy, sedgy shore lying above high-water mark.

Argued April 18th—decided June 6th, 1902.

ACTION in the nature of trespass *qu. cl. fr.* to determine the title to a triangular strip of land along the shore of Long Island Sound, brought to the Court of Common Pleas in Fairfield County and tried to the court, *Curtis, J.;* facts found and judgment rendered for the defendant to recover $10 damages, upon her counterclaim, and appeal by the plaintiff for alleged errors in the rulings and findings of the court. *No error.*

The case is sufficiently stated in the opinion.

*Frank M. Canfield*, with whom was *Bacon Wakeman*, for the appellant (plaintiff).

*Elmore S. Banks*, for the appellee (defendant).

TORRANCE, C. J. The complaint alleges that the plaintiff in May, 1899, was in possession of a certain lot of land in the town of Fairfield, and that the defendant unlawfully entered thereon and committed certain described acts of trespass. The defendant in substance denied these allegations, and by way of counterclaim alleged that she owned and possessed the *locus in quo*, and that the plaintiff unlawfully entered thereon and removed and destroyed a fence standing there, and claimed damages therefor. The plaintiff denied that the defendant was in possession of the land from which the plaintiff removed the fence, and alleged title thereto in himself, and this the defendant denied. The court found the issues for the defendant.

The *locus in quo* was a strip of land fronting on Long Island Sound about 230 feet, having a frontage of about 54 feet on the side opposite the Sound, with side lines about 600 feet long. For about 475 feet back from ordinary high-water mark the tract consists of the sand beach of the Sound, and sandy sedge.

For about 50 feet back of the sandy sedge ground there is a strip of salt meadow land, and the sedge of a creek bank. This creek is crossed by both side lines of said strip. At the trial the parties agreed that each on said land had done

the things charged against each. The plaintiff claimed title to the *locus* by deed, while the defendant claimed title thereto by deed and by adverse possession held since 1873.

With reference to the defendant's claim of title by adverse possession, the material facts found are these: In 1873, soon after receiving the deed under which she claimed title to the *locus,* the defendant entered upon the land in dispute and occupied the same as hereinafter stated. She erected thereon, and for many years maintained, signs, forbidding all persons taking sand from said beach. In the year 1873, and annually thereafter to the time of the trial, except in 1898 when she was in Europe, she cut the salt grass growing on the *locus,* and frequently carted grass from her other land in order to dry it and spread it over the *locus.* In 1893 she caused to be made a survey and map of her beach land, and said survey extended along the Sound for about 875 feet and a trifle beyond the line of posts set up by her and removed by the plaintiff, and she caused stakes to be driven at intervals along her claimed easterly line, some of which stakes were standing at the time of the trial of this case. Said map was thereafter kept continuously at the town hall in Fairfield (at the office of her son who was judge of probate), but was not filed for record. On numerous occasions since 1873, she has forbidden and prevented the carting of sand from said land.

From these facts the court finds that since January, 1873, and continuously to the date of the writ in this suit, " the defendant has been in the open, notorious, adverse and exclusive possession of said strip of land, in so far as such possession could reasonably be exercised over land of that character and description without fencing it "; and that no land of that description and in that vicinity is fenced. The court also finds " that the plaintiff has not been in such possession of said strip of land at any time."

The plaintiff's chain of claimed title is as follows: In 1864 Coles and others conveyed by deed to Albert Turner nine separate parcels of land in the vicinity of the *locus in quo,* which were each by lines particularly described upon a map made by the county surveyor, which map was attached to

and made by express reference in said deed a part thereof. Among these nine parcels was one described in said deed as "Number Five, salt meadow, containing four acres, one rood and fifteen rods." Albert Turner in May, 1866, conveyed by deed these nine parcels of land to Theodore Turney and wife, describing them in the deed by reference to the deed from Coles and others above mentioned. In June, 1866, Theodore Turney and wife conveyed by deed to the plaintiff the parcel designated as "Number Five" in the deed from Coles and others to Albert Turner, and described it as follows: "One certain piece of salt meadow containing five acres, more or less, bounded easterly by beach of Long Island Sound; northerly by channel, southerly by highway, and westerly by highway and creek." Subsequently, in 1871, by deed containing the same description, the plaintiff conveyed the land to John C. Sanford, reserving to himself and his heirs for twenty years the right to cut all the grass growing on the salt meadow, and this same land was afterwards in April, 1899, re-conveyed to the plaintiff by deed from the estate of John C. Sanford, in which the land was described substantially as it had been in the plaintiff's conveyance to Sanford.

The court finds that "number five" in the deed of Coles and others to Albert Turner "included no portion of the strip in question;" and that the subsequent deeds above mentioned were conveyances of the same land. The court further finds "that any extension of the boundaries of said tract number five that the plaintiff has made for himself or the Sanford family, has never by possession included any portion of the strip in question;" and that the tract of land now claimed by the plaintiff under the deeds aforesaid exceeds ten acres.

The court has thus found in effect, from facts that amply support the finding: (1) that the defendant at the time of the alleged trespasses by either party was in the sole and exclusive possession of the *locus;* (2) that the plaintiff was not in possession of the *locus* at the time in question, and that neither he, nor those under whom he claims, ever had

been in possession thereof; (3) that the plaintiff has no title by deed or otherwise to the *locus.*

This finding, irrespective of the finding as to adverse possession, is conclusive and the judgment founded thereon must stand, unless the record shows that in reaching it the court erred in some material point.

In the deed from Turney and wife to the plaintiff the land conveyed is described as bounded " easterly by beach of Long Island Sound." If " beach " here means high-water mark, then the deed purports to convey the *locus in quo;* but if it means the broad strip of sand described in the finding as composing the *locus,* then it does not purport to convey the *locus.* The plaintiff claimed that as matter of law it meant and could only mean the former; while the court, reading the deed in the light of the maps and surveys in evidence, and in the light of all the circumstances under which the deed was given, and having regard to the other parts of the description, held that it meant the sand strip and not high-water mark.

We think the conclusion reached by the court below upon this point is amply supported by the facts found, and that it did not err in holding that the word " beach " has no such inflexible meaning that it must denote land between high and low-water mark. *Merwin* v. *Wheeler*, 41 Conn. 14, 26 ; *East Hampton* v. *Kirk*, 68 N. Y. 459, 463.

There is no error.

In this opinion the other judges concurred.