BUILDING SUPPLY CORPORATION *v.* LAWRENCE
BRUNOLI, INC., ET AL.
(13183)

O'Connell, Schaller and Healey, Js.

Argued September 25, 1995—decision released January 16, 1996

*Robert L. Trowbridge,* for the appellant (plaintiff).

*John Rose, Jr.,* with whom were *Mary Anne A. Charron* and, on the brief, *John E. Shafer,* for the appellees (defendants).

HEALEY, J. This is an appeal in which the plaintiff, Building Supply Corporation, maintains that the trial court improperly denied its motion to set aside the judgment and to order a new trial on the ground that the judgment was not rendered within 120 days from the completion date of the trial in violation of General Statutes § 51-183b.[1] This dispute has generated several subissues, which we set out below.

---

[1] General Statutes § 51-183b provides: "Judgments in civil actions. Time limit. Any judge of the superior court and any state trial referee who has the power to render judgment, who has commenced the trial of any civil cause, shall have power to continue such trial and shall render judgment not later than one hundred and twenty days from the completion date of the trial of such civil cause. The parties may waive the provisions of this section."

On June 8, 1989, the department of transportation awarded a contract in the amount of $7,288,000 for the construction of a repair and maintenance facility in Old Saybrook to the named defendant, Lawrence Brunoli, Inc.[2] The defendant, as the general contractor, agreed to provide all of the material and work necessary to complete the project. The defendant executed a lump sum subcontract in the amount of $2,200,500 with the plaintiff for the performance of the site work on the project. The entire project was divided into 123 work items. It was the responsibility of the plaintiff to do the work set out in items twenty-six through forty-two.

On February 19, 1991, the plaintiff initiated this action against the defendant alleging, inter alia, that the defendant had failed to pay the plaintiff timely for the work that the plaintiff had performed on this project, notwithstanding the defendant's having been paid by the department of transportation for such work. In addition, the plaintiff alleged that the defendant had failed to pay the plaintiff for extra work it had performed for which the defendant had also been paid by the department of transportation. The plaintiff also asserted a claim pursuant to General Statutes § 49-41a[3]

---

[2] Continental Insurance Company, which had posted a payment bond on behalf of Lawrence Brunoli, Inc., was also named as a defendant in this case. We refer in this opinion to Lawrence Brunoli, Inc., as the defendant.

[3] General Statutes § 49-41a provides: "Enforcement of payment by general contractor to subcontractor and by subcontractor to his subcontractors. (a) When any public work is awarded by a contract for which a payment bond is required by section 49-41, the contract for the public work shall contain the following provisions: (1) A requirement that the general contractor, within thirty days after payment to the contractor by the state or a municipality, pay any amounts due any subcontractor, whether for labor performed or materials furnished, when the labor or materials have been included in a requisition submitted by the contractor and paid by the state or a municipality; (2) a requirement that the general contractor shall include in each of its subcontracts a provision requiring each subcontractor to pay any amounts due any of its subcontractors, whether for labor performed or materials furnished, within thirty days after such subcontractor receives a payment from the general contractor which encompasses labor or materials furnished by such subcontractor.

et seq. The defendant filed its answer as well as a counterclaim. The defendant's counterclaim, as later amended, included five counts that alleged, essentially, that the plaintiff had delayed the project, causing the defendant to incur additional expenses resulting in the withholding by the department of transportation, as liquidated damages, of payments due the defendant. The defendant also alleged that the plaintiff had failed to pay certain of its subcontractors in violation of General Statutes § 49-41a.

The trial began on January 5, 1993, and the evidence was concluded on or about March 4, 1993. Some miscellaneous matters were handled on March 11, 1993, and April 2, 1993. The trial itself consumed approximately twenty-six days. The total number of exhibits admitted,

"(b) If payment is not made by the general contractor or any of its subcontractors in accordance with such requirements, the subcontractor shall set forth his claim against the general contractor and the subcontractor of a subcontractor shall set forth its claim against the subcontractor through notice by registered or certified mail. Ten days after the receipt of that notice, the general contractor shall be liable to its subcontractor, and the subcontractor shall be liable to its subcontractor, for interest on the amount due and owing at the rate of one per cent per month. In addition, the general contractor, upon written demand of its subcontractor, or the subcontractor, upon written demand of its subcontractor, shall be required to place funds in the amount of the claim, plus interest of one per cent, in an interest-bearing escrow account in a bank in this state, provided the general contractor or subcontractor may refuse to place the funds in escrow on the grounds that the subcontractor has not substantially performed the work according to the terms of his or its employment. In the event that such general contractor or subcontractor refuses to place such funds in escrow, and the party making a claim against it under this section is found to have substantially performed its work in accordance with the terms of its employment in any arbitration or litigation to determine the validity of such claim, then such general contractor or subcontractor shall pay the attorney's fees of such party.

"(c) No payment may be withheld from a subcontractor for work performed because of a dispute between the general contractor and another contractor or subcontractor.

"(d) This section shall not be construed to prohibit progress payments prior to final payment of the contract and is applicable to all subcontractors for material or labor whether they have contracted directly with the general contractor or with some other subcontractor on the work."

such as payment requisitions, payment checks, job meeting minutes, inspectors' reports, photographs, charts and construction orders, was in excess of 1000. Many of the exhibits were duplicates of the same basic underlying activity. The trial court, *Dunn, J.*, requested that counsel each file proposed findings of fact and conclusions of law. Both parties complied,[4] and also filed extensive briefs with appendices.[5] The plaintiff filed its "Plaintiff's Reply Brief" and its proposed findings of fact on June 4, 1993.

About three months later, the trial court, in a meeting it had set up with counsel, requested that a stipulation be entered extending the time to render its decision by sixty days *and* that counsel participate in a posttrial settlement conference with another judge to try to settle the case. The written stipulation to extend, which was dated September 20, 1993, stated "counsel . . . hereby stipulate that the time within which the court (*Dunn, J.*) must render its decision is extended sixty (60) days to December 4, 1993."[6] Two days later, on September 22, 1993, a "Notice of Pretrial"[7] was issued on the

[4] The plaintiff filed proposed findings of fact that contained 131 separate paragraphs together with fourteen separate conclusions based on its proposed findings of fact. The defendant filed proposed findings of fact that contained 153 separate paragraphs together with twenty-three separate conclusions based on its proposed findings of fact.

[5] The plaintiff filed two briefs.

[6] The exact wording of the stipulation was: "In the above-captioned matter, counsel for the parties hereby stipulate that the time within which the court (*Dunn, J.*) must render its decision is extended sixty (60) days to December 4, 1993."

[7] The "Notice of Pretrial" provided: "The above captioned case is assigned in Hartford for pretrial. Counsel are ordered to appear with their clients. Insurance company personnel with authority to settle are to be present. Parties shall submit pretrial memos. No continuances will be granted. Nonappearance will result in dismissal or default. Report to caseflow office, Room 111, 95 Washington Street, Hartford for assignment at 2:00 PM on 10/12/93. No phone calls will be accepted by the Clerk's Office.

Hon. John Langenbach
Presiding Judge"

authority of the presiding judge, *Langenbach, J.* The "pretrial" was to be held on October 12, 1993. This notice directed, inter alia, that "[c]ounsel are ordered to appear with their clients," that the "[p]arties shall submit pretrial memos," that "[n]o continuances will be granted" and that "[n]onappearance will result in dismissal or default." Counsel did attend and participate in the pretrial conference on October 12, 1993. Each counsel, as ordered, submitted a pretrial memorandum to Judge Langenbach, who presided at that conference. The memorandum submitted by the plaintiff at that time was captioned "Plaintiff's Post-Trial Memorandum."[8] The October 12, 1993 "pretrial" did not produce a settlement of the case.

On December 2, 1993, counsel for the defendant wrote to Lawrence McLaughlin of the Superior Court clerk's office, stating that he had "locate[d] the pleading (memorandum) of October 12, 1993, which [the plaintiff's counsel] prepared and which Judge Dunn had referenced recently in his telephone communication with you." In that letter, counsel for the defendant stated that counsel for the plaintiff had given him a copy of that memorandum on October 12, 1993. The defendant's counsel also maintained in the letter that he had told the plaintiff's counsel that the memorandum should not be considered by Judge Dunn as it was prepared after the trial, was not prepared for a pretrial but for an attempted posttrial settlement and was not required of counsel by the trial court, and the pretrial briefing schedule had expired on June 4, 1993. This letter stated in closing, "I would ask that you please relay my position to Judge Dunn. Attached is a copy of my letter to [the

---

[8] According to the docket sheet of the trial court in the record before us, the "Plaintiff's Post-Trial Memorandum" was not filed in the Superior Court clerk's office as had the three briefs filed by the parties in accordance with the briefing schedules set by the trial court. Rather, it was submitted to Judge Langenbach on the date of the "pretrial" of October 12, 1993.

plaintiff's counsel] advising him of my intention to object to the court's considering his October 12, 1993 memorandum."

On December 16, 1993, the trial court filed its "Memorandum of Decision" in the clerk's office. While we examine this memorandum more closely below, we note here that the trial court concluded that the plaintiff "did not prove its claim by a preponderance of the credible evidence nor did the defendant Brunoli prove its counterclaim by any preponderance of credible evidence. Brunoli did have a good faith defense under the statute, § 49-41a. Neither side having sustained their burdens, neither is entitled to costs, interest or fees." The decision also stated: "There were no legal issues of any moment. The case boiled down to one of fact [and] credibility." It also specifically indicated that "[b]oth counsel were seasoned trial lawyers who comported themselves with decorum and professional competence." After stating that "[t]he last memo was filed on October 12, 1993," the trial court later stated that "the parties were not able to present a coherent finding of fact or proposed judgment to assist the court in evaluating this matter."[9] On December 21, 1993, the plaintiff filed its motion to set aside the judgment and for a new trial "on the ground that judgment was not rendered within 120 days from the completion of the trial and the agreed extension of said period by the parties. This Motion is made pursuant to Connecticut General Statutes § 51-183b."[10] This motion was denied

[9] The trial court also found no liability on Continental Insurance Company, the defendant's bonding company. See footnote 2.

[10] That motion in it entirety stated: "Motion to Set Aside Judgment and for New Trial

"The Plaintiff hereby moves that the judgment in the referenced matter be opened and set aside and that an order enter for a new trial on the ground that judgment was not rendered within 120 days from the completion of the trial and the agreed extension of said period by the parties. This motion is made pursuant to Connecticut General Statutes § 51-183b."

without opinion. No motion for articulation was filed. The plaintiff has appealed.[11]

On appeal, the plaintiff claims that the trial court acted improperly in denying its motion for a new trial when the trial court failed to render its judgment within 120 days, as extended by the written stipulation, as required by General Statutes § 51-183b. The plaintiff also claims on appeal that the trial court improperly found against it on every issue of this "lengthy and extensively briefed" construction case, after having it for over six months after briefs were filed, and then "rendering a decision simply stating that [the plaintiff] failed to meet its burden of proof on each and every issue without any analysis whatsoever."

I

"Section 51-183b is the most recent revision of legislation that, in order to reduce delay and its attendant costs, imposes time limits on the power of a trial judge to render judgment in a civil case." *Waterman* v. *United Caribbean, Inc.*, 215 Conn. 688, 691, 577 A.2d 1047 (1990). The statute provides that the trial judge "shall render judgment not later than one hundred and twenty days from the completion date of the trial" as well as that "[t]he parties may waive the provisions of this section." "A delay in decision beyond that authorized by the statute makes the decision voidable and, absent waiver, requires a new trial. *Creative Eye, Inc.* v. *Raum*, 168 Conn. 560, 561–62, 362 A.2d 845 (1975); *Bogaert* v. *Zoning Board of Appeals*, 162 Conn. 532, 536–38, 294 A.2d 573 (1972); *Borden* v. *Westport*, 112 Conn. 152, 154, 151 A. 512 (1930)." *Frank* v. *Streeter*, 192 Conn. 601, 603, 472 A.2d 1281 (1984).

Case law interpreting § 51-183b and its precursors "[has] held that the defect in a late judgment is that it

---

[11] The defendant has not appealed.

implicates the trial court's power to continue to exercise jurisdiction over the parties before it." *Waterman* v. *United Caribbean, Inc.*, supra, 215 Conn. 692. A late judgment has been characterized by our Supreme Court as voidable rather than void, and the lateness of a judgment, if not seasonably objected to, has been permitted to be waived by the conduct or consent of the parties. Id. That consent need not be express but may be implied. Id. In *Ippolito* v. *Ippolito*, 28 Conn. App. 745, 749, 612 A.2d 131, cert. denied, 224 Conn. 905, 615 A.2d 1047 (1992), this court stated: "In *Frank* v. *Streeter*, [supra, 192 Conn. 601], our Supreme Court held that the 'completion date' of § 51-183b encompasses the filing of briefs after the conclusion of testimony. The Supreme Court reasoned that this interpretation was necessary in order to provide the trial court with 'the opportunity to deliberate and to reach a thoughtful, reasoned conclusion.' Id., 605."

Initially, we must determine "the completion date of the trial." The plaintiff claims that the completion date was June 4, 1993, the date on which the reply briefs and proposed findings of facts and conclusions of law were filed. It argues that the 120 day period would have ended on October 4, 1993, but that the stipulation of September 20, 1993, extended to December 4, 1993, the date by which the trial judge was required to render his decision. Therefore, the plaintiff contends that the decision, which was filed on December 15, 1993, was late because that date was beyond the 120 days as extended by the stipulation. This, the plaintiff argues, made the judgment voidable, and, when the plaintiff objected seasonably to the lateness, it became void.

On the other hand, the defendant maintains that "the completion date of the trial" was October 12, 1993, and that date commenced the running of the 120 days under § 53-183b. The defendant claims that the "filing" on that date of the plaintiff's "last posttrial memorandum" was

considered by the trial court as part of the "post-trial briefing process." In making this claim, it argues that the trial court never returned that memorandum and never notified the parties that such "filing" would not be considered in making its decision. It also argues that the trial court accepted the plaintiff's October 12, 1993 memorandum over the defendant's "timely objection." In further support of this claim the defendant points out that the trial court's memorandum of decision filed December 16, 1993, specifically states that "[t]he last memo was filed on October 12, 1993." Therefore, the defendant argues, the December 16, 1993 decision was timely under § 53-183b.

In further support of its claim that the 120 days commenced to run on October 12, 1993, and that the judgment of December 16, 1993, was not late, the defendant advances the argument that the plaintiff has, by its conduct, waived its right to object to the lateness of the decision. The waiver argument is couched in terms of implied consent by the plaintiff to the late decision. Without abandoning its claim that the judgment was timely rendered on December 16, 1993, the defendant contends that the plaintiff, not only by "filing" its "Post-trial Memorandum" on October 12, 1993, but also by its participation in the "Post-Trial Settlement Conference" on that date, "waived by implication its right to object to a late decision." Such conduct, according to the defendant, "undoubtedly implied approval of a delay in the rendering of a decision on the merits of the case."

We are not persuaded by these claims of the defendant. Therefore, we hold that under the circumstances "the completion date of the trial" in this case was June 4, 1993, that the 120 day period provided by § 51-183b, as extended by the sixty day extension of September 10, 1993, required that the trial court render its decision by December 4, 1993. We further hold that the decision of December 16, 1993, was late, and that the plaintiff's

seasonable objection caused the revocation of the trial court's judgment because the trial court had lost jurisdiction of the parties. See *Sanchez* v. *Prestia*, 29 Conn. App. 157, 161–62, 612 A.2d 824, cert. denied, 224 Conn. 913, 617 A.2d 167 (1992).

In analyzing the foregoing claims, we begin with the fact that the last date on which briefs ordered by the trial court were to be filed was June 4, 1993. Thereafter, the trial judge, in September, 1993, requested that counsel meet with him concerning this case. Both counsel agreed and met with the trial court. At that time the court indicated that it had been working on the case. At that meeting, the trial court asked counsel if they would agree to a sixty day extension of time for the trial court to render its decision. Counsel, as already noted, did execute such a written stipulation, by which the parties agreed to extend the date on which the trial court was required to render a decision to December 4, 1993. In addition, the trial court, at the same meeting, inquired if counsel would agree to take part in a "pretrial"[12] with another judge in an effort to settle the case. Counsel agreed to do so. On September 22, 1993, two days after the execution of the sixty day stipulation, the "Notice of Pretrial" before Judge Langenbach issued from the clerk's office.

We cannot accept the defendant's claim that "the completion date of the trial" was October 12, 1993, and, therefore, the trial court's December 16, 1993 judgment was timely and valid as being rendered sixty-five days after the plaintiff's "final post-trial memorandum"[13] of October 12, 1993. Putting the defendant's claim in context requires that we point out that the defendant's brief on appeal concedes that the plaintiff's objection to the

[12] This case had already been "pretried" before the trial.

[13] Actually, the memorandum that the plaintiff submitted to Judge Langenbach per his order of September 22, 1993, at the "pretrial" of October 12, 1993, bore the latter date and was captioned "Plaintiff's Post-Trial Memorandum."

judgment filed on December 21, 1993,[14] six days after the trial court rendered its decision, was seasonable. There we note that the defendant's brief states: "Clearly, this objection was timely and cannot be a basis for finding that the Plaintiff-Appellant waived the claimed lateness of the judgment." The defendant maintains, however, that actions taken by the plaintiff "prior to the issuance of the Memorandum of Decision on December 15, 1993 are more than sufficient to imply such a waiver." As noted, "[w]aiver need not be express, but may consist of acts or conduct from which a waiver may be implied. . . . In other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Internal quotation marks omitted.) *Wadia Enterprises, Inc.* v. *Hirschfeld*, 224 Conn. 240, 252, 618 A.2d 506 (1992); see *O'Hara* v. *State*, 218 Conn. 628, 641, 590 A.2d 948 (1991).

The September, 1993 meeting between the trial court and counsel, which occurred some ninety days after that court had this case sub judice, was generated by the trial court. The sixty day written stipulation by counsel dated September 20, 1993, extending the time within which to render a decision from October 4, 1993, to December 4, 1993, was the time period that the trial court requested and that was agreed to by counsel. In its oral argument before us, the plaintiff maintained that the word "must" was purposefully included in the stipulation where it stated "that the time within which the court (*Dunn, J.*) *must* render its decision is extended sixty (60) days to December 4, 1993." (Emphasis added.) In his oral argument thereafter, counsel for the defendant never addressed the plaintiff's claim that the word "must" was inserted purposefully in the written stipulation of September 20, 1993. The trial court asked for a sixty day extension and it was agreed to

---

[14] The trial court filed its decision on Thursday, December 16, 1993, and the plaintiff filed its objection to it on Tuesday, December 21, 1993.

by both counsel. This appears to have been a reasonable request by the trial court. This was a construction contract case with competing claims (by both complaint and counterclaim) that had consumed some twenty-six trial days and included over 1000 exhibits. Moreover, the posttrial briefs filed through June 4, 1993, with their attachments, are not only copious and comprehensive, but they set out for decision a number of issues advanced by both the plaintiff and the defendant.

It appears that the defendant argues on its implied consent or implied waiver claim that the plaintiff did not have to join in the requested sixty day extension, and that it could simply have refused to do so just as it could have refused to agree with the trial court's simultaneous request that counsel agree to a "pretrial" by another judge. This certainly was an option for both the plaintiff and the defendant. Of course, not only the plaintiff but also the defendant were *each* seeking money damages in this case. Insofar as the plaintiff agreed to the sixty day extension and to participation in what became the October 12, 1993 pretrial, we deem it more reasonable to believe that the plaintiff deferred to the trial court's requests not only out of respect for its position but also because doing so might yield a practical result,[15] i.e., settlement. "Inherent in the concept of waiver is the notion of assent, which is an act of understanding that presupposes that the party to be affected has knowledge of its rights but does not want to assert them." *Fisette* v. *DiPietro*, 28 Conn. App. 379, 385, 611 A.2d 417 (1992). On this record we find the defendant's claim of implied consent, including the plaintiff's participation in the "pretrial" conference, unpersuasive.

[15] "It hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation." *Van Bronkhorst* v. *Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Once the "Notice of Pretrial" issued on September 22, 1993, on order of Judge Langenbach, counsel were bound to follow its directions. Those directions included counsel appearing with their clients at the designated court location on the date and time specified. Explicit sanctions for nonappearance were set out in the notice of pretrial. Directions also included the instruction that "[p]arties shall submit pretrial memos." Both parties submitted pretrial memoranda, in accordance with that instruction. That action was hardly voluntary.

The defendant makes much of the "Plaintiff's Post-Trial Memorandum" submitted by the plaintiff to Judge Langenbach at that "pretrial." The defendant draws attention to its caption; the caption is not significant as apparently claimed.[16] The defendant also contends that the trial court considered its submission to be part of the posttrial briefing process and that it is "unquestionable" that the court utilized the posttrial brief in arriving at its decision. The defendant points out that the trial court's decision specifically said, "The last memo was filed on October 12, 1993." Striving to bring its claim within *Ippolito* v. *Ippolito*, supra, 28 Conn. App. 745,[17] the defendant then notes that the trial court

[16] Regardless of its label, this memorandum plainly constituted the plaintiff's compliance with the order to "submit pretrial memos" and nothing more than that is fairly disclosed in the record before this court. In any event, in this case, the label on it is not controlling. See *Home Oil Co.* v. *Todd*, 195 Conn. 333, 342, 487 A.2d 1095 (1985).

[17] *Ippolito* v. *Ippolito*, supra, 28 Conn. App. 745, does not avail the defendant. In *Ippolito*, the completion date of the trial under General Statutes § 51-183b was at issue. In that case, the state trial referee gave "inconsistent statements" at the close of the evidence on the filing of reply briefs. He noted that if either counsel sought to file a reply brief and notified opposing counsel, then he would "allow 'both sides an opportunity to file reply briefs.' " Id., 748. Later, after setting a date for the filing of briefs, he stated that only one memorandum of law should by filed by the parties. On January 23, 1991, the plaintiff filed her brief and the defendant filed his brief on January 24, 1991. On January 29, 1991, the defendant filed a reply brief. The state trial referee issued his memorandum of decision on May 29, 1991. Id. In

did not return the plaintiff's October 12, 1993 memorandum, did not notify the parties that such "filing" would not be considered in reaching its decision and accepted the submittal of the posttrial memorandum over the defendant's December 2, 1993 objection. These are somewhat disingenuous arguments for the defendant to make in light of the defendant's December 3, 1993 letter of objection. In that letter, counsel for the defendant stated that it was "[his] position that Judge Dunn ought not to consider [the plaintiff's October 12, 1993 memorandum] given that it was prepared well after the end of trial; that it was prepared not for a 'pretrial' but for the purposes of an attempted *post-trial* settlement; that it was not required of counsel by the trial court; and that the post-trial briefing schedule expired June 4, 1993." (Emphasis in original.) Such antithetical statements demonstrate the defendant's recognition that the plaintiff's October 12, 1993 memorandum should not have been provided to Judge Dunn or considered by him in reaching his decision. It was not a posttrial brief that the trial court had requested or ordered and was clearly intended only for the settlement discussions of October 12, 1993, with Judge Langenbach. In any event, this October 12, 1993 memorandum of the plaintiff was

*Ippolito*, we observed that "[t]he fact that the state trial referee did not return the reply brief or notify the parties that he would not accept the reply brief indicate[d] that he considered it part of the posttrial briefing process." Id., 750. We held that the state trial referee's decision was timely under § 51-183b. Id.

The case before us is clearly distinguishable from *Ippolito*. In that case, the reply brief of January 29, 1991, was *voluntarily* filed in the clerk's office in accordance with the option to do so given by the trial court itself. In the case before us, the plaintiff was ordered to submit (not file) the October 12, 1993 memorandum by the order of the presiding judge, not the judge who tried the case as in *Ippolito*. In that case, only the trial court was involved throughout in issuing the orders concerning briefing, whereas in this case another judge, not the trial judge, was involved with the October 12, 1993 memorandum. In *Ippolito*, it was clearly intended that the filed reply brief be available to the trial court; in this case it was not so intended. *Ippolito* lacks comparative significance to the case before us.

a verbatim extract of the plaintiff's brief filed with the trial court more than five months earlier, on May 23, 1993.[18] No additional arguments were offered or information provided by the plaintiff's October 12, 1993 memorandum.

In sum, we hold in this case that "the completion date of the trial" was June 4, 1993; that the trial court's decision of December 16, 1993, was late, in violation of § 51-183b; that the plaintiff's motion of December 21, 1993, was "seasonable"; and, therefore, that the trial court's decision of December 11, 1993, was void, as the court had lost the power to exercise jurisdiction over the parties before it.

II

We turn to the effect of the failure of the plaintiff to file a motion for articulation with the trial court under Practice Book § 4051 on the relief it seeks on this appeal, which is a new trial. In seeking a new trial, the plaintiff, referring to the trial court decision, claims that the reasonable expectations of a party submitting a dispute to the judicial system for determination is that the decision rendered will address the issues presented to it for its resolution. Pointing to the detailed briefs filed together with the proposed findings of fact and conclusions of law of each party and the number of issues set out by each party in what is concededly a lengthy and factually complex construction case, the plaintiff strenuously argues that the trial court did not address the issues submitted by the litigants for its determination. Rather, the plaintiff maintains that the trial court's decision disposes of all the issues presented

[18] A comparison of the plaintiff's briefs of May 23, 1993, and October 12, 1993, shows that the October memorandum is in fact a verbatim extract from the earlier one. The textual matter is the same, the titles of each are different and the heading "The Claim" on the earlier brief was changed to "Damages" on the later one. The later brief has several cross-outs that are not substantive.

to it for its resolution with a one sentence holding that the plaintiff and the defendant failed on each and every issue presented in carrying the burden of proof.[19] In addition, the plaintiff argues that the trial court's comment in its decision that "[t]he parties were not able to present a coherent finding of fact or proposed judgment to assist the court in evaluating this matter" rendered filing a motion for articulation moot.

We begin our resolution of the issue of the plaintiff's failure to file a motion for articulation under § 4051 by reiterating that it is the duty of the appellant, the plaintiff in this case, to provide us with a record adequate to afford review. *Dime Savings Bank of Wallingford* v. *Cornaglia*, 33 Conn. App. 549, 553, 636 A.2d 1370, cert. granted, 229 Conn. 907, 640 A.2d 120 (1994) (appeal withdrawn, October 17, 1994); *North Park Mortgage Services, Inc.* v. *Pinette*, 27 Conn. App. 628, 632, 608 A.2d 714 (1992). It has been repeatedly stated that " '[w]here the factual or legal basis of the trial court's decision is unclear, the appellant should file a motion for articulation pursuant to Practice Book § 4051. *Thiel Realty Corporation* v. *Culligan Water Conditioning Co.*, 9 Conn. App. 191, 193, 517 A.2d 1052 (1986).' *Elliss* v. *Ronning*, 11 Conn. App. 662, 664, 528 A.2d 1174 (1987)." *Walton* v. *New Hartford*, 223 Conn. 155, 165, 612 A.2d 1153 (1992); see *Connecticut Bank & Trust Co.* v. *Winters*, 225 Conn. 146, 164, 622 A.2d 536 (1993). With reference to the failure of an appellant to file a motion for articulation where appropriate to do so, it is clear that "[u]nder normal circumstances," appellate courts will not act to correct a deficiency the appellant should have remedied. *North Park Mortgage Services,*

---

[19] The plaintiff refers to that part of the trial court decision that states: "In conclusion, [the plaintiff] did not prove its claim by a preponderance of credible evidence nor did the defendant Brunoli prove its counterclaim by any preponderance of credible evidence . . . ." See General Statutes § 49-41 (a).

*Inc.* v. *Pinette,* supra, 628; *Stroiney* v. *Crescent Lake Tax District,* 205 Conn. 290, 296, 533 A.2d 208 (1987).

The circumstances of this case, however, lead us to conclude that the failure of the plaintiff to file a motion for articulation does not preclude the relief it seeks on this appeal. As stated previously, decisional law interpreting § 51-183b and its precursors has "held that the defect in a late judgment is that it implicates the trial court's power to continue to exercise jurisdiction over the parties before it." *Waterman* v. *United Caribbean, Inc.,* supra, 215 Conn. 692, and cases cited therein. Our law has characterized a late judgment as voidable rather than void and has permitted the lateness of a judgment to be waived by the conduct or the consent of parties. Id., 692–93; *Sanchez* v. *Prestia,* supra, 29 Conn. App. 161; see *Creative Eye, Inc.* v. *Raum,* supra, 168 Conn. 562. Where, however, as here, there was no waiver of the statutory provisions of § 51-183b and no consent, as evidenced by the plaintiff's seasonable motion of December 21, 1993,[20] for a new trial, the trial court, as we have said previously, "lost jurisdiction of the parties" as of December 4, 1993, the last date the trial court could have rendered its decision under § 51-183b. *Waterman* v. *United Caribbean, Inc.,* supra, 691; *Sanchez* v. *Prestia,* supra, 161–62. Our appellate courts have held that "[a] delay in decision beyond that authorized by the statute makes the decision voidable and, absent waiver, requires a new trial. *Creative Eye, Inc.* v. *Raum,* [supra, 561–62]; *Bogaert* v. *Zoning Board of Appeals,*

---

[20] We have already had occasion in part I of this opinion to refer to the defendant's concession in its brief that "[t]he Plaintiff-Appellant's objection to the judgment below . . . filed on December 21, 1993, six days after the decision was rendered by the trial court" was such, as the defendant continues, that "[c]learly, this objection was timely and cannot be a basis for finding that the Plaintiff-Appellant waived the lateness of the judgment." The defendant did claim that "[h]owever, actions taken by the Plaintiff-Appellant prior to the issuance of the Memorandum of Decision on December 15, 1993, are more than sufficient to imply such a waiver."

[supra, 162 Conn. 536–38]; *Borden* v. *Westport*, [supra, 112 Conn. 154]." *Frank* v. *Streeter*, supra, 192 Conn. 603; *Sanchez* v. *Prestia*, supra, 161. Under the circumstances, the seasonable filing by the plaintiff of its December 21, 1993 motion served, in legal contemplation, to transform the trial court's late (and voidable) judgment into one that was void for lack of jurisdiction. The plaintiff could have filed a motion for articulation[21] but it chose not to, and, in filing the motion it did file, the legal consequences previously described occurred. Having elected to proceed as it did, it would have been inappropriate for the plaintiff to file a motion for articulation. As we said in *Sanchez*, where the trial court lost jurisdiction of the parties in a § 51-183b case, "[t]he consequence of the trial court's failure to render a decision within the statutory time limit is the revocation of the judgment eventually rendered, and the concomitant necessity for a new trial. *Waterman* v. *United Caribbean, Inc.*, supra [691]; *Frank* v. *Streeter*, supra [603]." *Sanchez* v. *Prestia*, supra, 161–62.[22]

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[21] Because the plaintiff did not file a motion for articulation, we are not called upon to determine whether in that event such conduct by the plaintiff could fairly be considered a waiver of any objection to the late trial court judgment.

[22] Our disposition of the articulation issue does not require us to reach and discuss the other matters touching this issue, which we note the plaintiff has briefed at length.