## PAUL STEWART *v.* TUNXIS SERVICE CENTER ET AL.
### (15249)

Peters, C. J., and Borden, Norcott, Katz and Palmer, Js.

Argued January 11—officially released May 21, 1996

*David M. Reilly,* with whom was *Allen J. Segal,* for the appellant (plaintiff).

*Loida John-Nicholson,* assistant attorney general, with whom, on the brief, were *Richard Blumenthal,* attorney general, and *William J. McCullough,* assistant

attorney general, for the appellee (defendant second injury fund).

BORDEN, J. The dispositive issue in this appeal is whether the workers' compensation review board (board) properly determined that the failure of a workers' compensation commissioner (commissioner) to issue his finding and award within 120 days of a hearing, as set forth in General Statutes § 31-300,[1] did not invali-

---

[1] General Statutes § 31-300 provides: "Award as judgment. Interest. Attorney's fee. Procedure on discontinuance or reduction. *As soon as may be after the conclusion of any hearing, but no later than one hundred twenty days after such conclusion, the commissioner shall send to each party a written copy of his findings and award.* The commissioner shall, as part of the written award, inform the employee or his dependent, as the case may be, of any rights the individual may have to an annual cost-of-living adjustment or to participate in a rehabilitation program under the provisions of this chapter. He shall retain the original findings and award in his office. If no appeal from his decision is taken by either party within ten days thereafter, such award shall be final and may be enforced in the same manner as a judgment of the superior court. The court may issue execution upon any uncontested or final award of a commissioner in the same manner as in cases of judgments rendered in the superior court; and, upon the filing of an application to the court for an execution, the commissioner in whose office the award is on file shall, upon the request of the clerk of said court, send to him a certified copy of such findings and award. In cases where, through the fault or neglect of the employer or insurer, adjustments of compensation have been unduly delayed, or where through such fault or neglect, payments have been unduly delayed, the commissioner may include in his award interest at the rate prescribed in section 37-3a and a reasonable attorney's fee in the case of undue delay in adjustments of compensation and may include in his award in the case of undue delay in payments of compensation, interest at twelve per cent per annum and a reasonable attorney's fee. Payments not commenced within thirty-five days after the filing of a written notice of claim shall be presumed to be unduly delayed unless a notice to contest the claim is filed in accordance with section 31-297. *In cases where there has been delay in either adjustment or payment,* which delay has not been due to the fault or neglect of the employer or insurer, whether such delay was caused by appeals or otherwise, the commissioner may allow interest at such rate, not to exceed the rate prescribed in section 37-3a, as may be fair and reasonable, taking into account whatever advantage the employer or insurer, as the case may be, may have had from the use of the money, the burden of showing that the rate in such case should be less than the rate prescribed in section 37-3a to be upon the employer or insurer. In cases where the claimant prevails and the commis-

date the commissioner's decision. The plaintiff, Paul Stewart, appeals[2] from a decision of the board concluding that (1) the commissioner's decision was valid despite his failure to comply with the 120 day time period set forth in § 31-300, and (2) the plaintiff was not permanently and totally disabled. The plaintiff claims that he is entitled to a new hearing because the commissioner had failed to issue an opinion within the statutory time period. The defendant second injury fund (fund) responds that the time period in § 31-300 is directory and that, in the absence of a showing of prejudice due to the delayed award, the plaintiff is not entitled to a new hearing. We conclude that the time period is mandatory and that the commissioner's decision was invalid because of its untimeliness, but that the invalid-

sioner finds that the employer or insurer has unreasonably contested liability, the commissioner may allow to the claimant a reasonable attorney's fee. No employer or insurer shall discontinue or reduce payment on account of total or partial incapacity under any such award, if it is claimed by or on behalf of the injured person that his incapacity still continues, unless such employer or insurer notifies the commissioner and the employee of such proposed discontinuance or reduction in the manner prescribed in section 31-296 and the commissioner specifically approves such discontinuance or reduction in writing. The commissioner shall render his decision within fourteen days of receipt of such notice and shall forward to all parties to the claim a copy of his decision not later than seven days after his decision has been rendered. If the decision of the commissioner finds for the employer or insurer, the injured person shall return any wrongful payments received from the day designated by the commissioner as the effective date for the discontinuance or reduction of benefits. Any employee whose benefits for total incapacity are discontinued under the provisions of this section and who is entitled to receive benefits for partial incapacity as a result of an award, shall receive those benefits commencing the day following the designated effective date for the discontinuance of benefits for total incapacity. In any case where the commissioner finds that the employer or insurer has discontinued or reduced any such payment without having given such notice and without the commissioner having approved such discontinuance or reduction in writing, the commissioner shall allow the claimant a reasonable attorney's fee together with interest at the rate prescribed in section 37-3a on the discontinued or reduced payments." (Emphasis added.)

[2] The plaintiff appealed from the decision of the board to the Appellate Court and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

ity was subject to waiver by the plaintiff. Accordingly, we reverse the decision of the board and remand the case for a determination of whether the plaintiff waived his right to challenge the commissioner's untimely issuance of his decision.

The following facts and procedural history are not in dispute. On May 14, 1985, while employed as an auto mechanic by the named defendant, Tunxis Service Center (Tunxis),[3] the plaintiff suffered a work-related injury to his right foot. On September 25, 1987, he injured his right wrist, as a result of a fall caused by the prior injury to his foot. The plaintiff received an impairment rating of 35 percent permanent partial disability of his foot and 22 percent permanent partial disability of his wrist, and collected permanent partial disability benefits pursuant to General Statutes § 31-308a.[4] After recuperating from the injury to his foot,

---

[3] Although Tunxis is the named defendant in this action, it is not a party to this appeal. The fund is the only defendant participating in the appeal.

[4] General Statutes § 31-308a provides: "Additional benefits for partial permanent disability. (a) In addition to the compensation benefits provided by section 31-308 for specific loss of a member or use of the function of a member of the body, or any personal injury covered by this chapter, the commissioner, after such payments provided by said section 31-308 have been paid for the period set forth in said section, may award additional compensation benefits for such partial permanent disability equal to seventy-five per cent of the difference between the wages currently earned by an employee in a position comparable to the position held by such injured employee prior to his injury, after such wages have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act in accordance with section 31-310, and the weekly amount which such employee will probably be able to earn thereafter, after such amount has been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act in accordance with section 31-310, to be determined by the commissioner based upon the nature and extent of the injury, the training, education and experience of the employee, the availability of work for persons with such physical condition and at the employee's age, but not more than one hundred per cent, raised to the next even dollar, of the average weekly earnings of production and related workers in manufacturing in the state, as determined in accordance with the provisions of section 31-309. If evidence of exact loss of earnings is not available, such loss may be computed from the proportionate loss of

the plaintiff returned to work at Tunxis, but was discharged on November 18, 1987.

For several years after being discharged from Tunxis, the plaintiff collected discretionary benefits under § 31-308a, participated in vocational training, and engaged in job searches, but he was unable to hold down a regular job. The plaintiff subsequently moved for a hearing in order to determine whether he was permanently and totally disabled and thus eligible for workers' compensation benefits pursuant to General Statutes § 31-307[5] or, in the alternative, was entitled to additional discretionary benefits under § 31-308a. The fund contested the plaintiff's claim that he was totally disabled.

Hearings were held before the commissioner on December 4, 1991, and on March 5, 1992, and the record

physical ability or earning power caused by the injury. The duration of such additional compensation shall be determined upon a similar basis by the commissioner, but in no event shall the duration of such additional compensation exceed the lesser of (1) the duration of the employee's permanent partial disability benefits, or (2) five hundred twenty weeks. Additional benefits provided under this section shall be available only to employees who are willing and able to perform work in this state.

"(b) Notwithstanding the provisions of subsection (a) of this section, additional benefits provided under this section shall be available only when the nature of the injury and its effect on the earning capacity of an employee warrant additional compensation."

[5] General Statutes § 31-307 provides in relevant part: "Compensation for total incapacity. (a) If any injury for which compensation is provided under the provisions of this chapter results in total incapacity to work, the injured employee shall be paid a weekly compensation equal to seventy-five per cent of his average weekly earnings as of the date of the injury, calculated pursuant to section 31-310, after such earnings have been reduced by any deduction for federal or state taxes, or both, and for the federal Insurance Contributions Act made from such employee's total wages received during the period of calculation of the employee's average weekly wage pursuant to said section 31-310; but the compensation shall not be more than the maximum weekly benefit rate set forth in section 31-309 for the year in which the injury occurred. No employee entitled to compensation under this section shall receive less than twenty per cent of the maximum weekly compensation rate, as provided in section 31-309, provided the minimum payment shall not exceed seventy-five per cent of the employee's average

was closed on May 26, 1992. On March 26, 1993, which date was beyond the 120 day time period set forth in § 31-300; see footnote 1; the commissioner issued his finding and award, concluding that the plaintiff had not established that he was totally disabled, but also concluding that the plaintiff was entitled to discretionary benefits for an additional six months. The plaintiff appealed to the board from the commissioner's decision, claiming that the commissioner's failure to issue his decision within 120 days of the conclusion of the hearing had rendered the decision invalid.

The board concluded that the plaintiff was entitled to a new hearing only if he could establish prejudice due to the delayed issuance of the commissioner's decision. The board further determined that the plaintiff had not demonstrated the requisite prejudice and, accordingly, upheld the commissioner's decision. This appeal followed.

The plaintiff claims that the board's decision was incorrect because it failed to recognize that the commissioner's late decision was invalid. The fund responds that the time period in § 31-300 is a directory provision, and that unless the plaintiff can demonstrate prejudice resulting from the untimely decision, the commissioner's decision remains valid. We disagree with the fund's contention that the legislature intended the time period in § 31-300 to be directory. We conclude that § 31-300 involves a mandatory time period. We also conclude, however, that any lack of timeliness may be waived, either expressly or by conduct.

"Well established principles of statutory construction govern our determination of whether a statutory time period is mandatory or directory. Our fundamental objective is to ascertain and give effect to the apparent

weekly wage, as determined under section 31-310, and the compensation shall not continue longer than the period of total incapacity. . . ."

intent of the legislature. *Ambroise* v. *William Raveis Real Estate, Inc.*, 226 Conn. 757, 764, 628 A.2d 1303 (1993); *Iovieno* v. *Commissioner of Correction*, 222 Conn. 254, 258, 608 A.2d 1174 (1992); *Chairman* v. *Freedom of Information Commission*, 217 Conn. 193, 200, 585 A.2d 96 (1991). In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994). "The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. If, however, the legislative provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory, especially where the requirement is stated in affirmative terms unaccompanied by negative words." (Internal quotation marks omitted.) *Katz* v. *Commissioner of Revenue Services*, 234 Conn. 614, 617, 662 A.2d 762 (1995). Under this analysis, if a statutory time period is mandatory in nature, a showing of prejudice is not necessary to a conclusion that a failure to comply with the time period will invalidate the untimely action.

We begin with the language of the statute. In urging that we conclude that the time period in § 31-300 is directory, the fund relies on the legislature's use of the word "shall," and argues that our cases have held that "shall" may have a meaning that is directory rather than mandatory.

The fund is correct that we have concluded that the "use of the word 'shall,' though significant, does not invariably create a mandatory duty." *Hall Manor Owner's Assn.* v. *West Haven*, 212 Conn. 147, 152, 561 A.2d 1373 (1989). The usual rule, however, is that "[t]he legislature's use of the word 'shall' generally evidences an intent that the statute be interpreted as mandatory." *Todd* v. *Glines*, 217 Conn. 1, 8, 583 A.2d 1287 (1991). The legislature's use of the word "shall" in § 31-300, therefore, although not conclusive, suggests that the time period was intended to be mandatory.

Furthermore, the legislature, rather than phrasing the amendment to § 31-300 in affirmative terms unaccompanied by negative words, as is often done with directory provisions; see, e.g., *Winslow* v. *Zoning Board*, 143 Conn. 381, 387–88, 122 A.2d 789 (1956) (statutory provision that "petition shall be scheduled for at least one public hearing to be held within sixty days" held directory because time limitation stated in affirmative terms); instead chose the negative phrasing "but no later than one hundred twenty days." The legislature's use of such negative terminology suggests that it intended § 31-300 to be mandatory.

The legislative genealogy and the legislative history of § 31-300 reinforce this linguistic interpretation. Prior to 1985, § 31-300 did not specify the time period within which a workers' compensation commissioner was required to issue an award. The relevant provision in that statute provided that "[a]s soon as may be after the conclusion of any hearing, the commissioner shall send to each party a written copy of his award." General Statutes (Rev. to 1985) § 31-300. In a case decided under that statute, the Appellate Court determined that a judgment rendered by a commissioner more than one year after the conclusion of a hearing was valid because, unlike other statutes that set a specific time period within which judgment must be rendered, § 31-300 did

not contain a specific time period. Because the legislature could have included a specific time period, but had chosen not to do so, the Appellate Court concluded that the commissioner's decision was valid. *Sullivan* v. *Northwind Energy Insulators, Inc.*, 2 Conn. App. 689, 690–91, 483 A.2d 618 (1984), cert. denied, 195 Conn. 801, 487 A.2d 564 (1985).

Shortly after the Appellate Court decided *Sullivan*, the legislature added the specific time period to § 31-300. As amended by No. 85-64, § 1, of the 1985 Public Acts, the relevant provision of § 31-300 reads: "As soon as may be after the conclusion of any hearing, *but no later than one hundred twenty days after such conclusion*, the commissioner shall send to each party a written copy of his award." (Emphasis added.) Although there is nothing in the legislative history of Public Act 85-64 to indicate that the amendment was specifically intended to address the Appellate Court's decision in *Sullivan*, the addition of a specific time period to § 31-300 so soon after the Appellate Court based a decision on the lack of such a time period suggests that the amendment was, indeed, a response to *Sullivan*.

Furthermore, because ordinarily "no part of a legislative enactment is to be treated as insignificant or unnecessary, and there is a presumption of purpose behind every sentence, clause or phrase . . . and no word in a statute is to be treated as superfluous"; (citation omitted; internal quotation marks omitted) *State* v. *Anderson*, 227 Conn. 518, 528, 631 A.2d 1149 (1993); we must attempt to give independent meaning to the 120 day time period that was added to § 31-300 by the amendment. If, prior to the amendment, the statutory directive that "[a]s soon as may be after the conclusion of any hearing, the commissioner shall send to each party a written copy of his award" was merely directory, then the commissioner was required, within a reasonable time after the hearing, to send a copy of his award, but failure to

issue a decision in a timely manner would not, as the Appellate Court decided in *Sullivan*, invalidate the commissioner's actions. If the insertion of the 120 day time period did not change the provision into a mandatory one, then the amendment would have had no purpose, because the words "but no later than one hundred twenty days after such conclusion" would merely have indicated a time period within which the commissioner should send his award but, again, noncompliance would not invalidate the commissioner's actions. In that event, the language added in the amendment would have no independent meaning.

Moreover, when the bill that ultimately became the amendment was considered in the legislature, Senator Kenneth T. Hampton remarked that "[t]his bill would *require* the Workers' Compensation Commissioner's decisions on tested claims to be issued within 120 days after the conclusion of the hearing." (Emphasis added.) 28 S. Proc., Pt. 4, 1985 Sess., p. 1106. Representative Jacob P. Rudolf made a similar remark: "[T]he bill provides new language *requiring* the Commissioner to submit a written decision of his results, *no later than 120 days*." (Emphasis added.) 28 H.R. Proc., Pt. 6, 1985 Sess., p. 2100. These remarks, in combination with the foregoing analysis, lead us to conclude that the legislature intended as the essence of the thing to be done, not simply the issuance of a decision, but the issuance of a *timely* decision. This legislative history supports our conclusion that the time period in § 31-300 is mandatory.

Although a mandatory statutory provision typically must be strictly complied with, the parties may waive noncompliance, either explicitly or implicitly by conduct. *Federal Deposit Ins. Corp.* v. *Hillcrest Associates*, 233 Conn. 153, 173, 659 A.2d 138 (1995). "Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . In

other words, waiver may be inferred from the circumstances if it is reasonable to do so." (Citations omitted; internal quotation marks omitted.) *Hensley* v. *Commissioner of Transportation*, 211 Conn. 173, 179, 558 A.2d 971 (1989).

Our conclusion that the commissioner was required to observe the mandatory time period in § 31-300 does not resolve the rights of the parties in this case because there has not been a determination of whether the plaintiff waived his right to challenge the commissioner's untimely decision.[6] Because the board did not consider the issue of waiver, we therefore remand the case to the board in order that it may resolve the issue of waiver.[7]

The decision of the board is reversed and the case is remanded to the board for further proceedings according to law.

In this opinion the other justices concurred.

---

[6] As to the issue of waiver, the fund points out that although six months had passed after the commissioner's findings and award should have been issued, the plaintiff did not object and continued to collect benefits during that time. The fund contends that the plaintiff must be deemed to have waived noncompliance with the 120 day time period because it was only when the plaintiff received an adverse decision that he objected and challenged the untimeliness of the commissioner's decision.

[7] Although ordinarily it is the commissioner, rather than the board, that makes factual findings in a workers' compensation case, in this instance it is more appropriately the board that must determine whether there was a waiver of the right to challenge an untimely decision of the commissioner. Cf. *Building Supply Corp.* v. *Lawrence Brunoli, Inc.*, 40 Conn. App. 89, 669 A.2d 620 (1996) (Appellate Court decided issue of whether plaintiff had waived untimely judgment by trial court).