# CARMINE J. ESPOSITO ET AL. *v.* LORI DIGENNARO ET AL.
## (AC 30165)

Bishop, Gruendel and Schaller, Js.

Argued January 19—officially released April 27, 2010

*Bruce S. Beck,* with whom was *Mark K. Ostrowski,* for the appellants (defendants).

*Richard P. Weinstein,* with whom was *Nathan A. Schatz,* for the appellees (plaintiffs).

*Opinion*

BISHOP, J. The defendants, Lori DiGennaro and Robert DiGennaro, appeal from the judgment of the trial court in favor of the plaintiffs, Carmine J. Esposito and National Waste Associates, LLC (NWA). The defendants claim that the court improperly concluded that they had waived certain rights provided for by way of a stipulated judgment in a prior action. We agree and, accordingly, reverse in part the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to our resolution of the defendants' appeal. At one time, Esposito and the defendants jointly owned NWA, Esposito owning 50 percent of the business and each of the defendants owning 25 percent.[1] As a result of disagreements concerning the operation of NWA, Esposito fired Lori DiGennaro from NWA in December, 2004, and Robert DiGennaro in early 2005. The defendants commenced an action against Esposito in March, 2005, *DiGennaro* v. *Esposito,* Superior Court, judicial district of Hartford, Docket No. CV-05-4008298-S. On August 25, 2005,

---

[1] The defendants are sister and brother, and Esposito is a cousin of the defendants.

Esposito caused to be distributed the surplus cash of NWA.[2] The amount of surplus cash distributed was $1.6 million—$800,000 to Esposito and $400,000 to each of the defendants. On August 31, 2005, that litigation was settled by a stipulated judgment.

Although Esposito represented that all of the surplus cash in NWA was distributed as of August 26, as part of the stipulated judgment, the defendants reserved the right to conduct an audit to see if there was any additional surplus cash to which they would be entitled. The stipulation specifically provided: "Esposito has represented that all of the surplus cash in NWA was distributed as of Friday, August 26. . . . [The defendants] can perform an audit, [they] asked for accounting information to verify this, and to the extent, Your Honor, that it's deemed that there is any additional surplus cash that hasn't been distributed, then we agree 50 percent of that additional surplus cash belongs to the [defendants]." In the late fall of 2005, the defendants determined that they would not conduct the audit because they lacked sufficient financial data.

On October 28, 2005, pursuant to the terms of the stipulated judgment, the parties held a closing at which time Esposito purchased the defendants' interest in NWA for a total payment of $4 million—$2 million to each of the defendants. At that time, the parties provided one another with general releases, but those releases specifically provided that they were not to be construed as releasing the parties from any obligations under the stipulated judgment.

The plaintiffs initiated this action by filing a two count complaint in which they alleged that the amount of surplus cash that Esposito had distributed in August,

[2] Surplus cash is defined as "the difference between cash and receivable versus the liabilities of NWA."

2005, exceeded the sum that they were required to distribute under the terms of the stipulation and that the defendants had improperly refused to reimburse them for the overpayments.[3] In response, the defendants filed an answer and a three count counterclaim. In the second count of their counterclaim, the defendants alleged, on the basis of information obtained through the course of discovery, that the amount of surplus cash that was disbursed to them in August, 2005, was insufficient.[4] By way of memorandum of decision filed June 4, 2008, the court found in favor of the defendants on the plaintiffs' complaint and found that the defendants were entitled to an award of attorney's fees for having to defend against the plaintiffs' complaint. The court also found that the defendants had waived their rights to conduct an audit and to obtain additional payments of surplus cash. The defendants filed this appeal, challenging only the court's resolution of the waiver issue as to the second count of their counterclaim.

On appeal, the defendants claim that they did not waive their right to seek an audit or their right to surplus cash. "Waiver involves an intentional relinquishment of a known right. . . . There cannot be a finding of waiver unless the party has both knowledge of the existence of the right and intention to relinquish it. . . . Waiver may be inferred from the circumstances if it is reasonable so to do. . . . Whether conduct constitutes a waiver is a question of fact . . . [and is] dependent on all of the surrounding circumstances and the testimony of the parties." (Citation omitted; internal quotation marks omitted.) *Roy* v. *Metropolitan Property & Casualty Ins. Co.*, 98 Conn. App. 528, 532, 909 A.2d 980

---

[3] Count one alleges breach of contract and breach of the implied covenant of good faith and fair dealing; count two alleges unjust enrichment.

[4] The court awarded attorney's fees under the first count of the defendants' counterclaim. That ruling is not being challenged on appeal. The defendants withdrew the third count of their counterclaim.

(2006). "Our review of the trial court's determination [therefore] is guided by the principle that, because waiver [is a question] of fact . . . we will not disturb the trial court's [finding] unless [it is] clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citation omitted; internal quotation marks omitted.) *Grey* v. *Connecticut Indemnity Services, Inc.*, 112 Conn. App. 811, 815, 964 A.2d 591 (2009).

The court concluded that the defendants waived their rights both to an audit and to their claim for any alleged underpayment of surplus cash. In support of that determination, the court found that the defendants indicated that they did not pursue an audit in the fall of 2005 because they "lacked certain information and felt it wasn't worth it." We agree that the evidence supports the court's determination that the defendants' conduct constituted a knowing relinquishment of their right to conduct an audit. In finding, however, that the defendants also waived their right to excess surplus cash, the court conflated two independent rights provided for in the stipulated judgment. The audit was the contemplated mechanism by which the defendants might discover that there was excess surplus cash. There is no evidence that the defendants' right to their share of excess surplus cash was dependent on an audit. Thus, although the evidence supports the court's finding that the defendants waived their right to an audit, there is no evidence in the record to support the court's finding that the defendants knowingly or intentionally relinquished their right to their share of excess surplus cash. Accordingly, the court's finding in that regard was clearly erroneous.

The judgment as to the second count of the defendants' counterclaim is reversed and the case is remanded for further proceedings according to law. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.