# STATE OF CONNECTICUT *v.* WALTER REDDY III
## (AC 33324)

DiPentima, C. J., and Bear and Bishop, Js.

Argued February 6—officially released April 24, 2012

*Joseph P. Secola,* for the appellant (respondent).

*Kathryn Ward Bare,* assistant state's attorney, with whom, on the brief, were *David I. Cohen,* state's attorney, and *Suzanne M. Vieux,* supervisory assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The respondent, Walter Reddy III, appeals from the judgment of the trial court finding that he posed a risk of imminent personal injury to other individuals and ordering that his firearms be seized for a period of one year pursuant to General Statutes § 29-38c.[1] On appeal, both the respondent and the state are in accord that the judgment of the court should be reversed. We agree with the parties and, accordingly, reverse the judgment of the trial court.

The following facts and procedural history are relevant to our discussion. On February 8, 2011, officers from the Weston police department applied for a risk warrant pursuant to § 29-38c to seize weapons and firearms in the custody of the respondent. The risk warrant

[1] General Statutes § 29-38c (a) provides: "Upon complaint on oath by any state's attorney or assistant state's attorney or by any two police officers, to any judge of the Superior Court, that such state's attorney or police officers have probable cause to believe that (1) a person poses a risk of imminent personal injury to himself or herself or to other individuals, (2) such person possesses one or more firearms, and (3) such firearm or firearms are within or upon any place, thing or person, such judge may issue a warrant commanding a proper officer to enter into or upon such place or thing, search the same or the person and take into such officer's custody any and all firearms. Such state's attorney or police officers shall not make such complaint unless such state's attorney or police officers have conducted an independent investigation and have determined that such probable cause exists and that there is no reasonable alternative available to prevent such person from causing imminent personal injury to himself or herself or to others with such firearm."

application indicated that on February 4, 2011, Rand McNeil reported a "suspicious incident" involving the respondent that had occurred approximately one week earlier. Specifically, McNeil informed members of the Weston police department that the respondent had "recently brandished a pistol grip shotgun and made several disturbing comments while holding the shotgun . . . ." McNeil also stated that the respondent was "in financial distress" with a financial institution and had stated, "I would not want to be someone from the bank coming to my house." (Internal quotation marks omitted.) McNeil also recounted the respondent's statement that he would be "ready for the cops next time they come."[2] (Internal quotation marks omitted.) The application for the risk warrant concluded: "That based on the facts and circumstances [the respondent] made recent threats of violence toward others including law enforcement officials and bank personnel by his statements, and displayed reckless use and brandishing of a firearm."

On February 8, 2011, the court issued the risk warrant, which was executed on February 14, 2011. Police officers seized the following items from the respondent: a pistol grip shotgun, stock and case, a revolver, assorted ammunition, an ammunition can, a red wire described as a fuse and two nonfunctioning grenades. Pursuant to § 29-38c (d), the court held a hearing on February 25, 2011. At the outset, the self-represented respondent indicated that he wanted to be represented by counsel. He stated that he had spoken with several attorneys but had not yet retained counsel. The prosecutor indicated that the state had issued subpoenas and had civilian witnesses and members of the Weston police department present to testify.

---

[2] According to the application for a risk warrant, McNeil ultimately declined to provide a written statement to the police because he feared retaliation from the respondent, whom he described as a "dangerous guy." McNeil also considered himself to be a friend of the respondent.

The court stated that pursuant to § 29-38c (d),[3] it was required to hold a hearing within fourteen days of the execution of the warrant. The prosecutor noted her agreement with the court's interpretation of the statute and requested that the hearing go forward. After further argument, the court proceeded with the hearing. After considering the testimony, the court found by clear and convincing evidence that the respondent posed a risk of imminent personal injury to other individuals. It ordered that the items seized by the police department be held for a period of one year. On March 17, 2011, the respondent filed a motion to open and set aside the findings and judgment and requested a new hearing with counsel. The court denied this motion on March 21, 2011. This appeal followed.

I

Before reaching the merits of the respondent's appeal, we must determine whether the case has been rendered moot due to the expiration of the court's order. We consider this issue first because it implicates our subject matter jurisdiction. See *State* v. *McElveen*, 117 Conn. App. 486, 489, 979 A.2d 604 (2009), appeal

[3] General Statutes § 29-38c (d) provides: "Not later than fourteen days after the execution of a warrant under this section, the court for the geographical area where the person named in the warrant resides shall hold a hearing to determine whether the seized firearms should be returned to the person named in the warrant or should continue to be held by the state. At such hearing the state shall have the burden of proving all material facts by clear and convincing evidence. If, after such hearing, the court finds by clear and convincing evidence that the person poses a risk of imminent personal injury to himself or herself or to other individuals, it may order that the firearm or firearms seized pursuant to the warrant issued under subsection (a) of this section continue to be held by the state for a period not to exceed one year, otherwise the court shall order the seized firearm or firearms to be returned to the person named in the warrant. If the court finds that the person poses a risk of imminent personal injury to himself or herself or to other individuals, it shall give notice to the Department of Mental Health and Addiction Services which may take such action pursuant to chapter 319i as it deems appropriate."

dismissed, 302 Conn. 532, 29 A.3d 897 (2011). Guided by this court's recent decision in *In re Addie May Nesbitt*, 124 Conn. App. 400, 5 A.3d 518, cert. denied, 299 Conn. 917, 10 A.3d 1051 (2010), we conclude that although this appeal is moot, it satisfies the requirements of the collateral consequences exception to the mootness doctrine.

"Mootness is a question of justiciability that must be determined as a threshold matter because it implicates [a] court's subject matter jurisdiction . . . . Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Internal quotation marks omitted.) *Reveron v. Board of Firearms Permit Examiners*, 123 Conn. App. 475, 477–78, 1 A.3d 1272 (2010). In the present case, the court's order regarding the firearms belonging to the respondent has expired, and therefore this court cannot afford him any practical relief from the February 25, 2011 judgment. "[A]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Internal quotation marks omitted.) *In re Addie May Nesbitt*, supra, 124 Conn. App. 404–405.

Our jurisprudence recognizes certain exceptions to the mootness doctrine. "[T]he court may retain jurisdiction when a litigant shows that there is a reasonable

possibility that prejudicial collateral consequences will occur. . . . [T]o invoke successfully the collateral consequences doctrine, the litigant must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not. This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Where there is no direct practical relief available from the reversal of the judgment . . . the collateral consequences doctrine acts as a surrogate, calling for a determination whether a decision in the case can afford the litigant some practical relief in the future." (Internal quotation marks omitted.) Id., 405.

In the *In re Addie May Nesbitt* case, which also involved a risk warrant to search and seize firearms pursuant to § 29-38c, we concluded that Nesbitt's appeal satisfied the collateral consequences exception, enabling this court to review the merits of the appeal even after the expiration of the court's order seizing Nesbitt's firearms. We explained: "The respondent [argues] that collateral consequences of the trial court's order exist because the notice reinstating her pistol permit specifically indicated that further incidents that call into question her suitability to hold a permit could lead to the permanent revocation of her pistol permit. She further argues that collateral consequences exist due to the notification to the department of mental health and addiction services of the court's order. We agree with the respondent." Id. Similar consequences exist in the present case as well. See General Statutes § 29-38c (d). We conclude, therefore, that the respondent has satisfied the requirements of the collateral consequences doctrine and that we have subject matter jurisdiction over the present appeal.

## II

On appeal, the parties agree that the court improperly construed § 29-38c. The parties differ, however, as to the specific avenue that this court should use to reverse the judgment of the trial court. The respondent argues that the fourteen day time frame to hold a hearing as set forth § 29-38c (d) is directory rather than mandatory. Specifically, he contends that the "time period is one of convenience, not substance . . . [and] 'is designed to secure order, system and dispatch in the proceedings' . . . ." He therefore claims that the court improperly construed § 29-38c (d) to require that the hearing be held within fourteen days of the execution of the risk warrant. The state counters that the fourteen day provision of § 29-38c (d) is mandatory but subject to waiver. We agree with the state.

As a preliminary matter, we identify our standard of review and the legal principles relevant to our analysis of whether § 29-38c (d) is directory or mandatory. Because this issue requires us to interpret § 29-38c (d), our review is plenary. *Stewart* v. *Watertown*, 303 Conn. 699, 710, 38 A.3d 72 (2012); see also *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 18, 848 A.2d 418 (2004) (issue of whether General Statutes § 52-102b [a] established mandatory or directory time limitation was one of statutory interpretation subject to plenary review).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes.

If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . . We recognize that terms in a statute are to be assigned their ordinary meaning, unless context dictates otherwise . . . ." (Internal quotation marks omitted.) *State* v. *Miscellaneous Fireworks*, 132 Conn. App. 679, 684–85, 34 A.3d 992 (2011); see also *Franklin* v. *Superior Casting*, 302 Conn. 219, 226, 24 A.3d 1233 (2011).

"The test to be applied in determining whether a statute is mandatory or directory is whether the prescribed mode of action is the essence of the thing to be accomplished, or in other words, whether it relates to a matter of substance or a matter of convenience. . . . If it is a matter of substance, the statutory provision is mandatory. . . . If, however, the . . . provision is designed to secure order, system and dispatch in the proceedings, it is generally held to be directory . . . . Definitive words, such as must or shall, ordinarily express legislative mandates of nondirectory nature. . . . As we recently noted, the word shall creates a mandatory duty when it is juxtaposed with [a] substantive action verb." (Citations omitted; internal quotation marks omitted.) *Wiseman* v. *Armstrong*, 295 Conn. 94, 100–101, 989 A.2d 1027 (2010); see also *Butts* v. *Bysiewicz*, 298 Conn. 665, 676, 5 A.3d 932 (2010).

Section 29-38c (d) provides in relevant part: "Not later than fourteen days after the execution of a warrant under this section, the court for the geographical area

where the person named in the warrant resides *shall hold* a hearing to determine whether the seized firearms should be returned to the person named in the warrant or should continue to be held by the state. . . ." (Emphasis added.) The statute later notes that the court *"may order"* that seized firearms remain in the custody of the state for a period not to exceed one year. (Emphasis added.) General Statutes § 29-38c (d). This hearing provides an opportunity to have the firearms returned if the state fails to sustain its burden of establishing that the individual poses a risk of imminent personal injury to himself or herself or to other individuals by clear and convincing evidence.

At the outset, we note that the use of the word "shall" in the statutes generally suggests a mandatory obligation. See *Stewart* v. *Tunxis Service Center*, 237 Conn. 71, 78, 676 A.2d 819 (1996).[4] Furthermore, the statutory language at issue juxtaposes "shall" with the substantive action verb "hold" and thus gives rise to a duty to act, an indication of a mandatory provision. Compare *Wiseman* v. *Armstrong*, supra, 295 Conn. 101; cf. *C. R. Klewin Northeast, LLC* v. *Fleming*, 284 Conn. 250, 263, 932 A.2d 1053 (2007) (noting statutory language did not juxtapose "shall" with substantive verb and therefore did not indicate mandatory obligation). Additionally, we note that a hearing is necessary in order to effectuate the purpose of the statute, that is, to seize firearms only from a person who is shown to pose a risk of imminent personal injury to himself, herself or other individuals. See *Wiseman* v. *Armstrong*, supra, 101 (polling of jury is substantive right established by rule of practice and

---

[4] Our Supreme Court has stated that "[d]efinitive words, such as must or shall, ordinarily express legislative mandates of a nondirectory nature. . . . We have noted, however, that the use of the word shall, though significant, does not invariably establish a mandatory duty." (Citations omitted; internal quotation marks omitted.) *State* v. *Pare*, 253 Conn. 611, 623, 755 A.2d 180 (2000); see also *Crest Pontiac Cadillac, Inc.* v. *Hadley*, 239 Conn. 437, 445, 685 A.2d 670 (1996).

imposes mandatory duty on trial court). Moreover, the legislature used the words "shall" and "may" in the same subsection. "[W]hen the legislature opts to use the words 'shall' and 'may' in the same statute, they 'must then be assumed to have been used with discrimination and a full awareness of the difference in their ordinary meanings.' " *Lostritto* v. *Community Action Agency of New Haven, Inc.*, supra, 269 Conn. 20. Finally, the statute provides that a hearing shall be held *not later* than fourteen days after the execution of the warrant. The use of the negative terminology indicates a mandatory action. *State* v. *Tabone*, 292 Conn. 417, 449–50, 973 A.2d 74 (2009) (*Schaller, J.*, concurring in part and dissenting in part); see also *Stewart* v. *Tunxis Service Center*, supra, 78. For these reasons, and to ensure that those individuals whose firearms have been seized are afforded the requisite due process, we conclude that § 29-38c (d) contains a mandatory requirement that a hearing be held within fourteen days of the execution of the risk warrant.

We now turn to the question of whether the court properly concluded that § 29-38c (d) is not subject to waiver. Our Supreme Court has stated: "Mandatory time limitations . . . must be complied with *absent an equitable reason for excusing compliance*, including waiver or consent by the parties." (Emphasis in original; internal quotation marks omitted.) *Pedro* v. *Miller*, 281 Conn. 112, 118, 914 A.2d 524 (2007); *Lostritto* v. *Community Action Agency of New Haven, Inc.*, supra, 269 Conn. 35–36; *Stewart* v. *Tunxis Service Center*, supra, 237 Conn. 80–81; *Schreck* v. *Stamford*, 72 Conn. App. 497, 499–500, 805 A.2d 776 (2002). We conclude, therefore, that the court improperly concluded that § 29-38c absolutely required that the hearing be held within fourteen days of the execution of the risk warrant.

The respondent also argues that because the record clearly demonstrates his intent to waive the fourteen

day time period contained in § 29-38c (d), this court should make a finding of waiver. At the outset of the hearing before the trial court, the respondent indicated his desire to be represented by counsel and that, although he had made certain inquiries, he had been unable to obtain an attorney.[5] Additionally, following the court's ruling, the respondent moved to open and set aside the judgment. In that motion, he argued that the denial of a continuance to obtain counsel "worked a substantial injustice."

"Waiver involves an intentional relinquishment of a known right. . . . There cannot be a finding of waiver unless the party has both knowledge of the existence of the right and intention to relinquish it. . . . Waiver may be inferred from the circumstances if it is reasonable so to do. . . . Whether conduct constitutes a waiver is a question of fact . . . [and is] dependent on all of the surrounding circumstances and the testimony of the parties." (Internal quotation marks omitted.) *Esposito* v. *DiGennaro*, 120 Conn. App. 627, 630, 992 A.2d 1230 (2010); see also *Lehn* v. *Marconi Builders, LLC*, 120 Conn. App. 459, 464, 992 A.2d 1137 (2010). Although waiver need not be express and may be implied from the acts or conduct of party, it nonetheless remains a question for the trier of fact. *Banks Building Co., LLC* v. *Malanga Family Real Estate Holding, LLC*, 102 Conn. App. 231, 239, 926 A.2d 1 (2007); see also *Ridgefield* v. *Eppoliti Realty Co.*, 71 Conn. App. 321, 340, 801 A.2d 902, cert. denied, 261 Conn. 933, 806 A.2d 1070 (2002). This court's function is not to make factual

---

[5] We note that the respondent has failed to provide this court with a signed transcript of the trial court's oral decision. Practice Book § 64-1 (a) provides in relevant part: "If oral, the decision shall be recorded by a court reporter and, if there is an appeal, the trial court shall create a memorandum of decision for use in the appeal by ordering a transcript of the portion of the proceedings in which it stated its oral decision. The transcript of the decision shall be signed by the trial judge and filed in the trial court clerk's office. . . ."

determinations. See *LeBlanc* v. *New England Raceway, LLC*, 116 Conn. App. 267, 285, 976 A.2d 750 (2009) ("The factfinding function is vested in the trial court with its unique opportunity to view the evidence . . . including its observations of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record which is available to us. Appellate review of a factual finding, therefore, is limited both as a practical matter and as a matter of the fundamental difference between the role of the trial court and an appellate court." [Internal quotation marks omitted.]). We decline the respondent's invitation to make the initial finding of waiver in this case.

The judgment is reversed and the case remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.