******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DONALD HOPE *v.* STATE OF CONNECTICUT
(AC 37354)

Lavine, Alvord and Sullivan, Js.

*Argued December 3, 2015—officially released February 9, 2016*

(Appeal from Superior Court, judicial district of
Hartford, geographical area number fourteen,
McWeeny, J.)

*Donald Hope*, self-represented, the appellant
(plaintiff).

*Timothy J. Sugrue*, assistant state's attorney, with
whom, on the brief, were *Gail P. Hardy*, state's attor-
ney, and *Michael Weber*, senior assistant state's attor-
ney, for the appellee (state).

*Opinion*

PER CURIAM. The plaintiff, Donald Hope, appeals from the judgment of the trial court that ordered his firearms to be seized for a period of one year pursuant to General Statutes § 29-36c (d) after finding that he posed a risk of imminent personal injury to himself or other individuals. On appeal, the plaintiff claims (1) that § 29-38c violates the second amendment to the United States constitution;[1] and (2) that even if § 29-38c is constitutional, the court erred in finding that the state had proven by clear and convincing evidence that his firearms should be seized pursuant to § 29-38c. We affirm the judgment of the trial court.

The following facts, which the court reasonably could have found, and procedural history are relevant to this appeal. On May 15, 2014, the West Hartford police took custody of the plaintiff's firearms. A warrant was issued on May 19, 2014, authorizing the police to seize the firearms pursuant to § 29-38c (a).[2] The court held a hearing pursuant to § 29-38c (d) on October 23, 2014, to determine whether the police would continue to hold the seized firearms.[3] The state called as its sole witness Officer Aaron Vafiades of the West Hartford Police Department. The plaintiff testified on his own behalf, and his wife, Susan Hope, also testified.

On May 15, 2014, the police responded to a call at the plaintiff's home to investigate a possible burglary. When Vafiades arrived, Susan Hope told him that she had arrived home and found the plaintiff in the kitchen with a .22 caliber rifle. He instructed her to call 911 because he thought that he had heard an intruder in the home. Vafiades did not observe the plaintiff holding a firearm but testified that Susan Hope told him that, upon arriving home, she found the plaintiff standing in the doorway with a rifle.

Vafiades and other officers inspected the premises and did not locate any intruders, or find any signs of forced entry. Vafiades testified that the plaintiff told him that he heard voices coming from the basement. The plaintiff was agitated and also told Vafiades that people were hacking his computers and electronic devices. The plaintiff testified at the hearing and denied that he told Vafiades that he heard voices in the basement.

Vafiades spoke with Susan Hope, who told him that the plaintiff was becoming increasingly delusional and that she was alarmed to arrive home and find him standing with a rifle in his hands. The police decided to remove the firearms from the premises for safekeeping. The plaintiff objected, but Vafiades testified that Susan Hope did not object and understood the police's objective in removing the firearms from the premises. The police insisted that the plaintiff be taken to the hospital for a psychiatric evaluation. Against his will, he was

transported by ambulance.

Vafiades testified about his subsequent investigation in preparing the warrant. He had learned about other instances where the West Hartford police responded to calls involving the plaintiff. On May 14, 2014, the plaintiff called the police stating that while he was driving by his office at another location in West Hartford, he observed several intruders going through his office. The police responded and found there was no sign of forced entry, or that anything was out of place inside the office. On May 16, 2014, the plaintiff's daughter contacted the police and stated that she was concerned about the plaintiff's increasing delusions and confrontations with his neighbors. The plaintiff was transported to the hospital for another psychiatric evaluation. Susan Hope testified that she believed the delusions were a side effect of the medicine that the plaintiff was taking to treat an underlying condition. The plaintiff was treated at the Institute of Living on May 17, 2014, to adjust his medication.

The court ultimately found that in May, 2014, the evidence clearly showed that the plaintiff posed an imminent risk of physical harm to himself or others, as he suffered from paranoia that had not been effectively treated by his physicians. The court found that the plaintiff continued to suffer from the underlying medical condition that required the medication that may have contributed to the delusions. Although the medication had been adjusted, the court found that "there's still that underlying paranoia that was expressed here in court," where the plaintiff had brought to the hearing two electronic devices wrapped in tin foil. The court ordered that the plaintiff's firearms be seized for one year. This appeal followed.

Before reaching the merits of the plaintiff's appeal, we address the issue of mootness. "[A]n actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot. . . . However, under this court's long-standing mootness jurisprudence . . . despite developments during the pendency of an appeal that would otherwise render a claim moot, the court may retain jurisdiction when a litigant shows there is a reasonable possibility that prejudicial collateral consequences will occur." (Internal quotation marks omitted.) *Putnam* v. *Kennedy*, 279 Conn. 162, 169, 900 A.2d 1256 (2006). Although the plaintiff's guns were returned to him on October 23, 2015, his appeal falls within the collateral consequences exception to the mootness doctrine because, as of the date this appeal was argued, he still must appear before the Board of Firearms Permit Examiners to determine whether his firearms permit

will be reinstated, and it is reasonably possible that the outcome of this appeal will affect that decision. See *In re Addie May Nesbitt*, 124 Conn. App. 400, 406–407, 5 A.3d 518, cert. denied, 299 Conn. 917, 10 A.3d 1051 (2010); see also *State* v. *Reddy*, 135 Conn. App. 65, 71, 42 A.3d 406 (2012).

I

We turn to the plaintiff's claim challenging the constitutionality of § 29-38c. The second amendment to the United States constitution provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The United States Supreme Court has recognized that the second amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia* v. *Heller*, 554 U.S. 570, 635, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008). The second amendment is fully applicable to the states through the due process clause of the fourteenth amendment. *McDonald* v. *Chicago*, 561 U.S. 742, 778, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010). It does not, however, confer the "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *District of Columbia* v. *Heller*, supra, 626. The Supreme Court recognized that legislatures may still use a variety of "presumptively lawful regulatory measures"; id., 627 n.26; to prevent the violence associated with firearms. Id., 636. These include "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id., 626–27.

"*Heller* aptly has been characterized as having adopted a two-pronged approach to [s]econd [a]mendment challenges. First, [the court] ask[s] whether the challenged law imposes a burden on conduct falling within the scope of the [s]econd [a]mendment's guarantee. . . . If it does not, [the] inquiry is complete. If it does, [the court] evaluate[s] the law under some form of means-end scrutiny.[4] If the law passes muster under that standard, it is constitutional. If it fails, it is invalid." (Footnote omitted; internal quotation marks omitted.) *State* v. *DeCiccio*, 315 Conn. 79, 111, 105 A.3d 165 (2014).

Section 29-38c does not implicate the second amendment, as it does not restrict the right of law-abiding, responsible citizens to use arms in defense of their homes. It restricts for up to one year the rights of only those whom a court has adjudged to pose a risk of imminent physical harm to themselves or others after affording due process protection to challenge the seizure of the firearms. The statute is an example of the longstanding "presumptively lawful regulatory measures" articulated in *District of Columbia* v. *Heller*,

supra, 544 U.S. 627 n.26. See, e.g., *San Diego* v. *Boggess*, 216 Cal. App. 4th 1494, 1505–1507, 157 Cal. Rptr. 3d 644 (2013) (holding that California statute allowing state to seize firearms from persons detained for examination due to mental illness who are likely to cause a danger did not violate the second amendment). We thus conclude that § 29-38c does not violate the second amendment.

## II

The plaintiff's second claim is that the court erred in finding that the state proved by clear and convincing evidence that he continued to pose a risk of imminent personal injury to himself or others. We disagree.

Section 29-38c (d) provides that at the hearing the court must first find by clear and convincing evidence that the person poses a risk of imminent personal injury to himself or others before ordering the weapons seized. Section 29-38c (b) provides a list of factors that the court shall consider in making its initial probable cause determination, but the statute makes clear that the court may consider other factors that are not enumerated. "Our standard of review on appeal . . . is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . .

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." *In re Brea B.*, 75 Conn. App. 466, 469, 816 A.2d 707 (2003). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *In re Francisco R.*, 111 Conn. App. 529, 535–36, 959 A.2d 1079 (2008).

On the basis of our review of the record, we conclude that the court's finding that the state proved by clear and convincing evidence that the plaintiff posed a risk of imminent personal injury to himself or others was not clearly erroneous. The court heard testimony that the plaintiff exhibited delusional behavior and called the police twice regarding burglaries that the police determined did not happen. On one occasion, the plaintiff responded to his delusion by drawing a firearm,

which concerned his wife. Furthermore, the police responded to a third call by the plaintiff's daughter who expressed concern about his increasingly erratic behavior and confrontations with his neighbors. We are sympathetic that the plaintiff's behavior in part may have been due to complications from the medicine that he was prescribed, but, in any event, the court clearly had a basis to reasonably find by clear and convincing evidence that, because of this behavior, the plaintiff posed an imminent risk of physical harm to himself or others.

The judgment is affirmed.

[1] The plaintiff's claim is based exclusively on the United States constitution and he did not raise a claim under article first, § 15, of the Connecticut constitution, which provides that "[e]very citizen has a right to bear arms in defense of himself and the state." He therefore does not seek relief under the Connecticut constitution. *State* v. *Reid*, 254 Conn. 540, 553 n.6, 757 A.2d 482 (2000).

[2] General Statutes § 29-38c (a) provides: "Upon complaint on oath by any state's attorney or assistant state's attorney or by any two police officers, to any judge of the Superior Court, that such state's attorney or police officers have probable cause to believe that (1) a person poses a risk of imminent personal injury to himself or herself or to other individuals, (2) such person possesses one or more firearms, and (3) such firearm or firearms are within or upon any place, thing or person, such judge may issue a warrant commanding a proper officer to enter into or upon such place or thing, search the same or the person and take into such officer's custody any and all firearms and ammunition. Such state's attorney or police officers shall not make such complaint unless such state's attorney or police officers have conducted an independent investigation and have determined that such probable cause exists and that there is no reasonable alternative available to prevent such person from causing imminent personal injury to himself or herself or to others with such firearm."

[3] General Statutes § 29-38c (d) provides in relevant part: "Not later than fourteen days after the execution of a warrant under this section, the court for the geographical area where the person named in the warrant resides shall hold a hearing to determine whether the firearm or firearms and any ammunition seized should be returned to the person named in the warrant or should continue to be held by the state. At such hearing the state shall have the burden of proving all material facts by clear and convincing evidence. If, after such hearing, the court finds by clear and convincing evidence that the person poses a risk of imminent personal injury to himself or herself or to other individuals, the court may order that the firearm or firearms and any ammunition seized pursuant to the warrant issued under subsection (a) of this section continue to be held by the state for a period not to exceed one year, otherwise the court shall order the firearm or firearms and any ammunition seized to be returned to the person named in the warrant. . . ."

[4] Means-end scrutiny refers to the "familiar 'levels of scrutiny' analysis introduced in the famous Footnote Four of *United States* v. *Carolene Products Co.*, [304 U.S. 144, 152 n.4, 58 S. Ct. 778, 82 L. Ed. 1234 (1938)] . . . ." *New York State Rifle & Pistol Assn. Inc.* v. *Cuomo*, 804 F.3d 242, 258 (2d Cir. 2015). The United States Supreme Court in *Heller* did not articulate the level of constitutional review to be employed in second amendment cases, but noted that rational basis review is inapplicable. *District of Columbia* v. *Heller*, supra, 554 U.S. 628–29. Our Supreme Court and courts throughout the country "have nearly universally applied some form of intermediate scrutiny in the [s]econd amendment context." (Internal quotation marks omitted.) *State* v. *DeCiccio*, supra, 315 Conn. 142–43.